In the matter of the Sale of the Real Estate of John M. Guernsey, deceased.

### ERROR TO GRUNDY.

Where a mother, in conjunction with the guardian of infants, presents a claim for their nurture, which is allowed, and proceeds thereupon to have the real estate of the deceased father sold, and parcelled out, to the mother, in fraud of the children, the whole proceeding, even upon the motion of a stranger, may be set aside, and held void—and all participators in the transaction rebuked.

It is the duty of a guardian to contest such a claim, and he is an incompetent witness to establish it.

It is the duty of the Probate Court, where injustice is attempted upon orphans, to protect them, and to refuse an allowance where application is made to sell their inheritance.

Error will lie from an order approving or disapproving the report of a guardian empowered to sell the land of his ward.

At the August term, 1856, of the County Court of Grundy county, E. P. Seely was duly appointed guardian of the persons and property of Frank Guernsey and John M. Guernsey, infant heirs of John M. Guernsey, late of said county, deceased.

At September term, 1856, E. P. Seely, guardian of Frank Guernsey and John M. Guernsey, minors, filed his petition, setting forth that he is the guardian of said minors, duly appointed by the County Court of Grundy county; that there is no per-

sonal property in his hands belonging to said minors and never was, and that said minors were never the owners of any personal property ; that they are the owners, in fee simple, subject to the dower of Eliza Guernsey, of lot two, in block two, in Chapin's Addition to the town of Morris, in said county of Grundy ; that said Frank Guernsey is indebted to said Eliza Guernsey in the sum of four hundred and sixteen dollars, for boarding, clothing, etc., as will appear by the records of said County Court when sitting as a court of probate, and that the said John M. Guernsey is indebted to the said Eliza Guernsey in the sum of four hundred and seven dollars, for boarding, clothing, etc., as will appear by the records of said County Court when sitting as a court of probate ; that due notice of the present application had been given ; and prayed for the sale of said lot.

Whereupon at said term of said court it was ordered that said guardian sell said lot of land, or so much thereof as will sell to advantage, and in such divisions as will insure the best price, at public auction, at the door of the court house in said county, on the following terms, to wit : One-fourth down at the time of sale, one-fourth in six months, with interest ; one-fourth in twelve months, with interest, and one-fourth in eighteen months, with interest ; and that notice of sale be given by posting at least six written or printed notices in six of the most public places of said county, at least twenty days previous to said sale ; and to secure the purchase money, for which a credit may be given, by mortgage or mortgages on the piece or parcel of said lot sold, and to execute to the purchaser or purchasers of said lot, or any piece or parcel thereof, a deed or deeds for the same, and make report thereof to this court at the next term.

The report of the guardian was filed December 9th, 1856, and sworn to by him, and thereupon a motion was made by guardian for confirmation.

The report by the guardian sets forth that on the sixth day of October, A. D. 1856, he exposed a part of said lot, in subdivisions, at door of court house in said county, for sale at public vendue, and at such sale, James N. Reading bid for twenty feet, to be taken off of east side of said lot, the sum of two hundred and thirty-five dollars, and the same was struck off and sold to him for that price ; and that at said sale, and at said time and place, he sold the middle third part of said lot, being twenty feet in width on the street, and that at such sale, James N. Reading and William T. Hopkins bid for said last mentioned twenty feet of said lot, the sum of two hundred and twenty dollars, and the same was struck off and sold to them at that price, they being the highest and best bidders therefor ; that

on the 12th day of September, A. D. 1856, he posted six written notices, giving notice of said sale, in six of the most public places in said county, and which said time of posting was more than twenty days previous to said sale, which notice is set out in the opinion of the court.

That he had received from J. N. Reading, the one-fourth of the purchase money for said twenty feet taken off the east side of said lot, and from James N. Reading and William T. Hopkins, one-fourth of the purchase money for said middle third of said lot, and that to secure the balance of the purchase money due on said lots, he took from said parties mortgages thereon; that he had executed to said J. N. Reading a deed for said east twenty feet, and to said Reading and Hopkins a deed for said middle third.

On the affidavit of John Skinner, neither the guardian nor purchaser or purchasers being present or informed of any proceedings to be had in reference to the setting aside of said sale, and no person appearing for said guardian or either of said purchasers, nor they or either of them being informed of any objection to said report or confirmation of said sale, the court being satisfied that said real estate, for some cause, did not bring such price as the same was worth, at the time of said sale, refused to approve or confirm said sale, and ordered the same to be set aside.

And now come the said Reading and Hopkins, as well for themselves as for the said J. N. Reading and for the said E. P. Seely, guardian as aforesaid, and assign the following errors upon the record:

1. Because said County Court refused to confirm the said sale, made by said guardian.

2. Because said court permitted the officious intermeddling of a stranger to the record and to all of the proceedings, having no interest therein, and not being bound for any costs, and having obtained no leave to interfere, and not appearing as guardian *ad litem*, or next friend to said infants, or showing any interest or liability in the same.

3. Because said court set aside said sale.

4. Because it was error in said court to take any action in said cause, other than confirming said sale, without notice to said guardian and purchasers.

5. Because of many other manifest errors, uncertainties and insufficiencies in the proceedings of said County Court.

6. Because neither the guardian nor either of the purchasers had notice of, or was present when the proceedings before the said County Court were had, when said sale was set aside.

READING & HOPKINS, for Plaintiffs in Error.

S. HARRIS, for Defendants in Error.

BREESE, J. The record in this case, discloses these facts:

On the 6th of August, 1856, Eliza Guernsey, the widow of J. M. Guernsey, mother of Frank then aged ten years, and of John M. then seven past, applied to the judge of the County Court of Grundy county, to appoint E. P. Seely their guardian, and represented to the court that all the property they had, was a town lot in the town of Morris.

The judge granted the application at once, and on the same day appointed E. P. Seely their guardian, who executed the required bond.

On the next day, August 7th, Eliza Guernsey, by Seely and Bougher, her attorneys, filed the following claim against " said estate ":

" *John M. Guernsey* DR. to *Eliza Guernsey*:
To boarding and clothing from September 28th, 1848,
   to July 20th, 1856—407 weeks, *a* $1.50 per week, $610.00

*Frank Guernsey* DR. to *Eliza Guernsey :*
To boarding and clothing from July 13th, 1848, to
   July 13th, 1856—416 weeks, *a* $1.50 per week,   $624.00"

This account " was duly attested by an affidavit of E. P. Seely, guardian as aforesaid."

" The court having carefully considered the matter, orders: That said claims be allowed, after deducting fifty cents per week, viz : at one dollar per week, as follows:

For board and clothing of John M. Guernsey,     $407.00
For board and clothing of Frank Guernsey,     -     416.00
                                                   ————
                                                   $823.00 "

This allowance being made, Seely, as guardian, at the next September term, presented his petition to that court, setting forth his appointment as guardian ; that there was no personal property in his hands belonging to the said minors, and never was, that they were never the owners of any personal property ; that they are the owners in fee, subject to the dower of their mother, Eliza Guernsey, of lot 2, in block 2, in Chapin's Addition to the town of Morris, in that county ; that Frank Guernsey is indebted to said Eliza Guernsey in the sum of four hundred and sixteen dollars, for boarding, clothing, etc., as appears by the records of the County Court, and that John M. is indebted

to the said Eliza, four hundred and seven dollars for the same, and that due notice of this application had been given, and praying for the sale of the lot.

Whereupon at said term of said court it was ordered "that said guardian sell said lot of land, or so much thereof as will sell to advantage and in such divisions as will insure the best price, at public auction, at the door of the court house in said county, on the following terms, to wit: One-fourth down at the time of sale; one-fourth in six months, with interest; one-fourth in twelve months, with interest, and one-fourth in eighteen months, with interest, and that notice of sale be given by posting at least six written or printed notices in six of the most public places of said county, at least twenty days previous to said sale, and to secure the purchase money for which a credit may be given, by mortgage or mortgages on the piece or parcel of said lot sold, and to execute to the purchaser or purchasers of said lot, or any piece or parcel thereof, a deed or deeds for the same, and make report thereof to this court at the next term."

The report of the sale by the guardian was filed December 9th, 1856, and thereupon he moved for confirmation of the sale.

The report sets forth that on the 6th day of October, A. D. 1856, he exposed a part of said lot, in subdivisions, at the door of the court house in said county, for sale at public vendue, and at such sale, James N. Reading bid for twenty feet, to be taken off of the east side of said lot, the sum of two hundred and thirty-five dollars, and the same was struck off and sold to him for that price, he being the highest and best bidder therefor, and that was the highest and best price bid for the same; and that at said sale, and at said time and place, he sold the middle third part of said lot, being twenty feet in width on the street, and that at such sale, James N. Reading and William T. Hopkins, bid for said last mentioned twenty feet of said lot, the sum of two hundred and twenty dollars, and the same was struck off and sold to them at that price, they being the highest and best bidders therefor, and that was the highest price bid for the same; that on the 12th day of September, A. D. 1856, he posted six written notices, giving notice of the sale, in six of the most public places in the county, and which time of posting was more than twenty days previous to the sale. The notice was as follows:

"GUARDIAN'S SALE.—Notice is hereby given, that as the guardian of Frank Guernsey and John M. Guernsey, and by virtue of an order of the County Court of the county of Grundy, and State of Illinois, I shall, on the 6th day of October, A. D. 1856, between the hours of ten o'clock A. M. and four o'clock P. M., proceed to sell, in subdivisions, at the door of the court house in said county, at public vendue, lot No. 2, in block No. 2, in Chapin's Addition to the town of Morris,

in said county. The terms of sale will be, one-fourth in hand, and one-fourth in six months, and one-fourth in twelve months, and one-fourth in eighteen months, with interest on the back payments, and the back payments to be secured on the lot, or parcel of lot purchased.          E. P. SEELY, *Guardian.*

*Morris, September 12th,* 1856.

And he further reported, that " Eliza Guernsey had a dower in said lot, and that she chose to retain a part of the lot as her dower therein, and that she executed quit-claim deeds for two-thirds of said lot to the purchasers thereof, whose names are stated aforesaid, and that in consequence, he sold but two-thirds of said lot, permitting the widow to retain the one-third of said lot which she had the right to do ; and said guardian would further make report, that after said sale he received from said J. N. Reading, the one-fourth of the purchase money for the twenty feet taken off the east side of the lot, and from James N. Reading and William T. Hopkins, one-fourth of the purchase money for the middle third of said lot, and that to secure the balance of the purchase money for the east twenty feet of said lot, he took from Reading a mortgage thereon, and that to secure the balance of the purchase money on the middle third, he took from J. N. Reading and Wm. T. Hopkins a mortgage thereon ; that he had executed to J. N. Reading a deed for the east twenty feet, and to Reading and Hopkins a deed for the middle third."

Pending this motion, John Skinner, a person in no way related to the children, or having any personal interest in the proceedings, in the absence of the guardian and the purchasers, and without any knowledge on their part, that there would be objections made to the confirmation, presented an affidavit to the court, of one John Skinner, swearing to no important fact, but full of his impressions and conjectures, that there was improper conduct on the part of the guardian, as interested in the purchase, and that the property was sold for much less than its then value, and that said sale was not held at the door of the court house, etc.

On considering this report and affidavit of Skinner, the court refused to confirm the sale, and entered an order for a re-sale of the east two-thirds, on six weeks notice, to be published in the Grundy County Herald, besides posting, and to insert in the notice, " that the widow will sign her right of dower, in said east two-thirds of said lot."

The purchasers, Reading and Hopkins, and Seely, the guardian, bring the case here, by writ of error, and assign the following errors :

1. Because the County Court refused to confirm the sale made by the guardian.

2.   Because the court permitted the officious intermeddling of a stranger to the record and to all of the proceedings, having no interest therein, and not being bound for any costs, and having obtained no leave to interfere, and not appearing as guardian *ad litem*, or next friend to the infants, or showing any interest or liability in the same.

3.   Because the court set aside the sale.

4.   Because it was error in the court, to take any action in the cause, other than confirming the sale, without notice to the guardian and purchasers.

5.   Because of many other manifest errors, uncertainties and insufficiencies, in the proceedings of the County Court.

6.   Because neither the guardian nor either of the purchasers, had notice of or was present, when the proceedings before the County Court were had, when the sale was set aside.

A preliminary objection is made, that no appeal or writ of error will lie from an order, approving or disapproving the report of a guardian, empowered to sell the land of his wards.

It is held in *Ayers* v. *Baumgarten*, 15 Ill. R. 446, that a decision, approving or disapproving a guardian's report, may be assigned for error.

As to the first error assigned, whether the court erred or not, in refusing to confirm the sale, depends upon the facts stated above, and they seem to us fully to justify the court in its refusal. Disposing of this assignment of error, disposes of the whole case.   The whole thing has a bad appearance, and does not commend itself to the favorable consideration of this court. The account presented by the mother, and which Seely, the guardian, attested by his oath, and which the court allowed, bears on its face the strongest indications of being unjust, and not proper to be allowed, and which the guardian should, strenuously, have contended against.

We think the files of Courts of Probate may be searched in vain, for a parallel to the account the mother exhibited against her children, and which the guardian, who ought to have resisted its allowance, attested by his affidavit, as though it was just. From the dates given, John was a posthumous child, born on the 28th September, 1848, and by the account as presented, sworn to by the guardian, and allowed by the court, he is charged, not it is true, whilst *en ventre sa mere*, but as soon as he saw the light, for the sustenance he drew from his mother's breast, and at the rate, as charged and sworn to by the guardian, of one dollar and fifty cents per week, and as allowed by the court, one dollar per week.   Frank is charged from the death of his father, July 13, 1848, at the same rate.   He was then about two years of age, and the accommodating guardian swears

29

this is all just and correct. This guardian, instead of resisting the claim against his wards, did, by himself and partner in the practice of the law, as the attorney of the mother, present the claim for allowance, and became a witness against them to substantiate it. This the judge knew, and under the circumstances, his suspicions ought to have been excited that all was not right. The guardian should not have been allowed to testify in the case ; he should have defended against the claim, and the court should not have allowed it, under the proof. It is unjust on its face, and though " attested " by a man who was neglecting one of the highest trusts which can be committed to a man, that fact cannot relieve it from this charge.

Here was a great wrong at the start, and subsequent proceedings but augmented it. This is abundantly shown, by the conduct of the guardian in making the sale, and by his report thereon. For a knowledge of his conduct in this regard we do not consider the affidavit of John Skinner, ·a mere volunteer, having no interest in the proceedings, though it doubtless contributed to the decision of the judge in refusing to confirm the sale. And this is one of the main objections now made, that this affidavit was received.

It is not unusual, we believe, for all courts to hear and receive the statements or affidavit of one claiming to speak or act as *amicus curiæ*—so to suggest to the court as that it may not be led unconsciously into error, and where there may seem to be collusion between parties, by which another party may be injured, or for any cause, which the court is at liberty to recognize as proper for the interference of such person. In all such cases, if the parties immediately interested are not present, it would be but right that they should be informed of this interference, and time given them to resist or explain, by affidavit or otherwise, and the parties in this case should have been notified, to enable them to file counter affidavits.

The affidavit of Skinner does not state, in positive terms, any wrong or illegal act done by the guardian in the sale, or in any of his proceedings to that end. It is full of his impressions, and calculated to have the effect, as it did have, to induce the judge to examine more closely into this matter than he chose to do, when he allowed the unjust account, and passed the order to sell the lots to pay it. The affidavit of itself was not sufficient to prevent a confirmation of the sale, but it was sufficient to attract the attention of the judge to the report itself, which carries on its face its own condemnation.

The report shows that this guardian, clothed only with the power to sell the entire lot, in parcels, took upon himself to determine that the widow was entitled to dower in it, and then

constituting himself a commissioner, he set off and allotted to her the west third of the lot, having first privately obtained her relinquishment of dower to the east two-thirds. Our statute, section 18, title Dower, does not authorize the guardian to set off the dower. If the heir does not do it, she must sue for it. This fact was not given to the public by the notice of sale, and was known only, we are to presume, to the mother and guardian, and the bidders, who are the plaintiffs in error here.

This was such an omission as to render the sale void. The bidders were not on equal grounds; certain ones knew it; the public at large did not. The knowledge of that fact would have added greatly to the value of the portion sold. If the guardian intended to act fairly, why was not the public notified that the widow had released her interest, and that there were no dower rights existing against the property? Why did the guardian give the widow one-third of the whole property? What right had he to do so? This, of itself, was sufficient to set aside the proceedings, without regarding Skinner's affidavit. We have not given to that any weight in arriving at our decision.

The case shows injustice on its face at its inception, and errors in proceeding on the part of the guardian fully justifying the county court in refusing to confirm the sale, leaving wholly out of view anything contained in Skinner's affidavit. The purchasers under this sale may have intended no wrong; indeed we will admit they did not intend any, yet for the errors and misconduct of the guardian, they may have to suffer. We cannot aid them. We affirm the judgment of the County Court in refusing to confirm the sale, and reverse the order directing a re-sale.

*Judgment affirmed.*